CHRYSALIS HOUSE, INC., Appellant,

v.

Kenneth TACKETT; Honorable Grant Roark, Administrative Law Judge; and Workers' Compensation Board, Appellees.

No. 2008–SC–000221–WC.

Supreme Court of Kentucky.

March 19, 2009.

Rehearing Denied June 25, 2009.

Gregory Lonzo Little, Ferreri & Fogle, Lexington, KY, Counsel for Appellant, Chrysalis House, Inc.

David Marshall, Lexington, KY, Counsel for Appellee, Kenneth Tackett.

## OPINION OF THE COURT

An Administrative Law Judge (ALJ) ordered the claimant's employer to pay him a double income benefit under KRS 342.730(1)(c)2, basing the decision on findings that he returned to work at the same or a greater wage but that the employer terminated the employment and he earned less presently than at the time of his injury. The Workers' Compensation Board and the Court of Appeals affirmed based on the statute's unambiguous language. Appealing, the employer asserts that it discharged the claimant for cause due to an allegation of criminal activity; that the ALJ determined he committed criminal ac-

tivity; and that public policy prohibits him from profiting from such activity.

We reverse. KRS 342.730(1)(a) through (e) provide compensation for "disability" caused by a work-related injury. When read in context, KRS 342.730(1)(c)2 permits a double income benefit if post-injury employment at the same or a greater wage ceases "for any reason with or without cause," provided that the reason relates to the disabling injury. The ALJ must determine on remand whether the reason for a cessation of employment at the same or a greater wage related to the claimant's disabling injury.

The claimant was employed by Chrysalis House, a residential substance abuse treatment center. An ALJ determined that he sustained a work-related injury in 2003 that produced an 11% permanent impairment rating. The ALJ also determined that he lacked the physical capacity to return to the type of work performed at the time of the injury but that he had returned to light-duty work at the same or a greater wage and would be able to continue to perform such work for the indefinite future. Thus, the claimant received income benefits of $38.87 per week under KRS 342.730(1)(c)2, which authorized double benefits during any period of cessation of such employment.

The claimant moved to reopen on October 2, 2006, to conform the award to KRS 342.730(1)(c)2. He asserted that the employment ceased on September 20, 2006, and that he earned $5 less per hour than at the time of his injury. Chrysalis resisted on the ground that he was discharged for cause due to theft.

The claimant testified that he found a blank money order in the Chrysalis parking lot and put it in his pocket. When two days passed with no one from Chrysalis claiming that they had lost the money order, he made it payable to himself and cashed it. He discovered subsequently

that one of the residents alleged that a money order had been stolen. He left an anonymous note in her room, stating that the money would be repaid, and then repaid it. After Chrysalis discovered that he was the individual who had cashed the money order, Lisa Minton called him to her office and discharged him. About two weeks later, he found work with a temporary services business but earned less than he had at the time of the injury.

Lisa Minton, Chrysalis's executive director and personnel committee chair, testified that she discharged the claimant for violating the center's personnel policy, which states that theft is grounds for disciplinary action or discharge. She explained that a resident reported the money order stolen from her dresser drawer and had it traced. The return showed ultimately that the claimant had cashed it. During the intervening month, an anonymous note and payments appeared in the resident's dresser drawer. Although the resident refused to press charges, Chrysalis attempted to do so but was unsuccessful because it was not the victim of the alleged theft.

Erica Harney, Chrysalis's assistant director, testified that she received a copy of the incident report that the resident completed. She stated that the staff had access to the residents' rooms, which were unlocked. She could find no documentation that the claimant had ever been in the affected resident's room.

The ALJ found the alleged criminal activity to be irrelevant for the purposes of KRS 342.730(1)(c)2. Rejecting Chrysalis's argument that the claimant should not be permitted to profit from an illegal act, the ALJ noted that the double benefit did not result from the illegal act but from the decision to discharge him, "which may or may not be directly related to the illegal act." In response to Chrysalis's request for a specific finding concerning whether the claimant committed a criminal act, the ALJ determined that his explanations were not credible and that he stole the money order, endorsed it, and cashed it.

■ KRS 342.730(1)(c)2 provides as follows:

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, *for any reason, with or without cause,* payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments. (emphasis added).

Chrysalis states that it discharged the claimant for theft and points to the specific finding that he committed theft.[1] It asserts that the Commonwealth has a longstanding policy of preventing individuals from profiting from their illegal acts and that the legislature did not intend for the words "with or without cause" to supercede that policy. In other words, although KRS 342.730(1)(c)2 enhances an award upon the cessation of employment "with or without cause," the phrase does not include a discharge that is based on the commission of an illegal act. Relying on authority that illustrates a policy of reducing or disallowing compensation to wrongdoers or of refusing to enforce contracts that are illegal or where the consideration

---

1. *Cf. American Cold Storage v. Sinegra,* 2003–SC–0972–WC, 2004 WL 2624163 (Ky.2004) (worker discharged for alleged criminal activ-ity but record contained no finding that he committed such activity).

is against public policy, Chrysalis argues that to interpret the statute in a manner that encourages illegal conduct would be contrary to public policy.[2]

The claimant argues that the statute is clear and unambiguous. It even permits an individual who returns to work at the same or a greater wage to quit voluntarily and receive a double benefit. He also argues that the authority on which Chrysalis's public policy argument relies involves convicted criminals and that he was neither charged with nor convicted of a crime.

We presume when interpreting a statute that the legislature intended for it to mean exactly what it says.[3] Although ambiguous language must be interpreted based on legislative purpose and intent, unambiguous language requires no interpretation.[4] Yet, nothing requires a statute's subsection to be read in a vacuum rather than in the context of the entire statute.

KRS 342.730(1)(c)2 appears at first blush to provide clearly and unambiguously for a double benefit during a period of cessation of employment at the same or a greater wage "for any reason, with or without cause." It is, however, a subsection of KRS 342.730(1), which authorizes income benefits to be awarded for "disability" that results from a work-related injury. We conclude for that reason that, when read in context, KRS 342.730(1)(c)2 permits a double income benefit during any period that employment at the same or a greater wage ceases "for any reason, with or without cause," provided that the reason relates to the disabling injury.

KRS 342.730(1)(a) through (e) provide income benefits "for disability" caused by a work-related injury. KRS 342.730(1)(b) authorizes a basic income benefit "for partial disability." The benefit is a function of the permanent impairment rating that an injury causes and a statutory factor that is weighted to favor higher impairment ratings, which are likely to have greater occupational effects. KRS 342.730(1)(c) adjusts the benefit to account more accurately for the injury's occupational effects by considering the worker's physical capacity to perform the type of work performed at the time of injury, a return to work at the same or a greater wage, age, and educational level.[5]

KRS 342.730(1)(c)1 compensates a worker who does not retain the physical capacity to return to the type of work performed at the time of the injury with a triple benefit. Consistent with KRS 342.710(1), KRS 342.730(1)(c)2 encourages a worker who retains the physical capacity to return to work at the same or a greater wage to do so.[6] It permits the worker to receive the basic partial disability benefit in addition to the wage from working but assures the worker of a double benefit if the attempt later proves to be unsuccessful.[7]

**2.** *Dunlap v. Lebus,* 112 Ky. 237, 65 S.W. 441 (1901); *Stephens v. Denison,* 150 S.W.3d 80 (Ky.App.2004); *Ray v. Stone,* 952 S.W.2d 220 (Ky.App.1997).

**3.** *Revenue Cabinet v. O'Daniel,* 153 S.W.3d 815, 819 (Ky.2005).

**4.** *Hale v. Combs,* 30 S.W.3d 146, 151 (Ky. 2000); *City of Louisville v. Helman,* 253 S.W.2d 598, 600 (Ky.1952); *AK Steel Corporation v. Commonwealth,* 87 S.W.3d 15, 17 (Ky. App.2002).

**5.** Although not relevant for the present purpose, KRS 342.730(1)(d) bases the duration of a partial disability award on the severity of the disability.

**6.** KRS 342.710(1) states that one of the primary goals of Chapter 342 is to encourage injured workers to return to work, preferably with the same employer and to the same or similar work.

**7.** *AK Steel Corp. v. Childers,* 167 S.W.3d 672, 676 (Ky.App.2005).

Moreover, it discourages an employer from continuing to employ an injured worker at the same or a greater wage for the sole purpose of securing a finding of partial rather than total disability or a finding under KRS 342.730(1)(c)2 rather than KRS 342.730(1)(c)1, after which KRS 342.125(1)(d) would require the worker to show a worsening of impairment to re-open.[8]

The ALJ determined in the present case that the claimant committed an illegal act but that the employer's decision to discharge him "may or may not be directly related to the illegal act." Although he obtained subsequent employment, he earned a lower average weekly wage. Thus, this claim must be remanded for further proceedings to include a finding concerning whether employment at the same or a greater wage ceased for reasons related to his injury.

The decision of the Court of Appeals is reversed and this claim is remanded for further proceedings in accordance with this opinion.

MINTON, C.J.; ABRAMSON, CUNNINGHAM, SCHRODER, SCOTT, and VENTERS, JJ., concur. NOBLE, J., not sitting.

---

**8.** *See Fawbush v. Gwinn,* 103 S.W.3d 5 (Ky. 2003).