**Chester HOGSTON, Appellant,**

v.

**BELL SOUTH TELECOMMUNICATIONS; Honorable James Kerr, Administrative Law Judge; and Workers' Compensation Board, Appellees.**

No. 2010–SC–000299–WC.

Supreme Court of Kentucky.

Nov. 18, 2010.

Robert J. Greene, Kelsey E. Friend Law Firm, Pikeville, KY, Counsel for Appellant, Chester Hogston.

James Burke Cooper, Boehl, Stopher & Graves, LLP, Lexington, KY, Counsel for Appellee, Bell South Telecommunications.

## OPINION OF THE COURT

This appeal concerns an Administrative Law Judge's (ALJ's) refusal to award the claimant double benefits under KRS 342.730(1)(c)2, having found there to be no connection between the cessation of his employment and the injury for which he sought double benefits. The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, the claimant asserts that the decisions below result from a misapplication of the decision in *Chrysalis House, Inc. v. Tackett.*[1] We reverse because we agree that the claimant is entitled to double benefits, but we decline his invitation to limit *Chrysalis House* to instances where an employee would otherwise profit from illegal conduct.

The claimant began working for the defendant-employer in 1977 as a lineman. He became a facility technician early in 2000, which required him to work in a bucket truck; go into manholes; and climb poles and ladders when a bucket truck

1. 283 S.W.3d 671 (Ky.2009).

could not be used. The job also required lifting, squatting, and bending.

The claimant had a history of injuries that required surgeries to both of his knees. The record indicates that he received temporary total disability benefits for a work-related right knee injury that occurred in the 1980s and injured his left knee twice, while playing football in 1976 and while working in 1997. He sustained the right knee injury presently at issue in a work-related fall that occurred in January 2006.

Dr. Shockey performed surgery to repair medial and lateral meniscal tears in the right knee in March 2006. He later reported a good surgical result and assigned a 4% permanent impairment rating but no restrictions. He also reported a finding of "gouty arthropathy of the knee" but indicated that it was unrelated to the January 2006 injury.

The claimant returned to work after recovering from his work-related right knee injury. Dr. Shockey testified when deposed that he performed two additional knee surgeries, in June and December 2007, to address conditions he considered to be unrelated to the January 2006 injury. He assigned a 10% impairment rating in July 2007, after the second right knee surgery, but attributed the claimant's restrictions to the left knee. He noted in August 2007 that the claimant's right knee was doing well but that his left knee was painful. Moreover, the claimant had difficulty when ascending and descending inclines and with lifting. He also had difficulty with his hands, including frequent numbness in the median nerve distribution. Dr. Shockey restricted the claimant from significant climbing or heavy lifting and performed bilateral carpal tunnel releases, which he stated were non-work-related. He later performed left knee surgery and attributed the need for surgery

to the combined effects of the 1976 injury and the 1997 injury, the latter of which he characterized as being work-related.

At some point the employer offered the claimant light-duty work in the office. He remained on the payroll until January 10, 2008, when he was terminated because his permanent medical restrictions prevented him from performing the duties of a facility technician, particularly climbing poles and ladders. He supported his application for workers' compensation benefits with Dr. Shockey's medical records. The claimant testified at the hearing that his permanent physical restrictions resulted from his non-work-related carpal tunnel and left knee conditions.

The ALJ awarded benefits based on the 4% permanent impairment rating that Dr. Shockey assigned to the January 2006 injury. Having found that the claimant's physical restrictions did not result from the injury, the ALJ relied on *Chrysalis House* as a basis to refuse to award double benefits under KRS 342.730(*l*)(c)2.

KRS 342.730(*l*)(c)2 provides as follows:

If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

The court acknowledged in *Chrysalis House* that KRS 342.730(1)(c)2 "appears at first blush to provide clearly and unambiguously for a double benefit during a ... cessation of employment at the same or a greater wage 'for any reason with or without cause.' "[2] The court determined, however, that the provision is a subsection of KRS 342.730(1) that must be interpreted in the context in which it was written. Thus, when read in light of the fact that KRS 342.730(1) provides income benefits based on "disability" due to impairment from a work-related injury, KRS 342.730(*l*)(c)2 permits a double benefit "during any period that employment at the same or a greater wage ceases 'for any reason with or without cause,' provided that the reason relates to the disabling injury."[3]

The claimant argues that *Chrysalis House* ignored the plain language of KRS 342.730(1)(c)2, which is more specific than KRS 342.730(1), and that the decision's precedential value should be limited to its facts, *i.e.*, to instances where an employee would otherwise profit from the consequences of an illegal act. We disagree.

The court decided *Chrysalis House* as a matter of statutory interpretation, not as a matter of public policy with respect to an individual's right to profit from an illegal act. As a consequence, the court remanded the claim for the ALJ to determine "whether employment at the same or a greater wage ceased for reasons related to [Tackett's] injury."[4] The rationale supporting the court's interpretation of KRS 342.730(*l*)(c)2 applies equally to the present facts, which involve no allegation of illegal conduct.

■ What distinguishes this case from *Chrysalis House* for the purpose of KRS 342.730(1)(c)2 is that the claimant sustained multiple work-related injuries that involved both of his knees. Mindful that KRS 342.730(1) permits disability from previous work-related injuries other than coal workers' pneumoconiosis or traumatic hearing loss to be considered for certain limited purposes,[5] we hold that KRS 342.730(*l*)(c)2 includes a cessation of employment due to the disabling effects of previous work-related injuries as well as the injury being compensated.

■ Dr. Shockey attributed the claimant's permanent medical restrictions to his left knee, but he attributed part of the disability they produced to the effects of the 1997 work-related injury. Although the ALJ found there to be "no connection" between the cessation of the claimant's employment and the 2006 work-related knee injury for which he sought compensation, Dr. Shockey's uncontroverted testimony linked the reason for the claimant's termination to work-related disability.

The decision of the Court of Appeals is reversed, and this claim is remanded for the entry of an award under KRS 342.730(*l*)(c)2.

All sitting. All concur.

---

2. 283 S.W.3d at 674.

3. *Id.*

4. 283 S.W.3d at 675.

5. KRS 342.730(1)(e) excludes such disability for the purpose of determining the extent of partial disability or duration of benefits but makes no reference to enhanced benefits or to work-related conditions not previously compensated under Chapter 342. KRS 342.730(1)(a) excludes such disability but permits disability from previous work-related injuries to be considered when finding a worker to be totally disabled.