RENDERED: SEPTEMBER 27, 2018
TO BE PUBLISHED



# Supreme Court of Kentucky

2017-SC-000377-WC

ACTIVE CARE CHIROPRACTIC, INC.         APPELLANT

ON APPEAL FROM COURT OF APPEALS
V.           CASE NO. 2017-CA-00469-WC
WORKERS' COMPENSATION BOARD NO. 14-WC-81319

KATHERINE RUDD;         APPELLEES
HONORABLE JEANIE OWEN MILLER,
ADMINISTRATIVE LAW JUDGE;
WORKERS' COMPENSATION BOARD
AND KENTUCKY COURT OF APPEALS

## OPINION OF THE COURT BY JUSTICE VANMETER

### AFFIRMING

KRS[1] 342.730(1)(c)2 states: "During any period of cessation of . . . employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable[.]"[2] The sole issue for this Court on appeal, an issue of first impression, is whether the two-

---

[1] Kentucky Revised Statutes.

[2] We note that the General Assembly amended KRS 342.730 this past legislative session. 2018 Ky. Acts ch. 40, § 13. But these amendments do not affect this case in any way.

multiplier under KRS 342.730(1)(c)2 applies to a claimant's benefits when that claimant returns to work and later retires for reasons not solely related to the work-related injury itself. We hold that in such circumstances the two-multiplier must be applied to comply with the unambiguous language of KRS 342.730(1)(c)2. Accordingly, we affirm.

## I. FACTUAL BACKGROUND.

The facts in this case are not in dispute. Active Care Chiropractic employed Katherine Rudd part-time. One day, while taking out the trash at work, she slipped and fell, injuring her shoulder. After three shoulder surgeries, she returned to work. About a year after her return to work, she voluntarily retired, for reasons not solely related to the work-related injury. At her Formal Hearing Rudd stated:

> It was not due to the accident, not directly. I was turning sixty, and I'd never had any medical problems before. This kind of made me re-evaluate things. I decided I wanted to spend what quality years I have left doing things that provide the greatest satisfaction, and decided that being a secretary just wasn't doing it for me anymore. So I retired.

At Rudd's Benefit Review Conference, the parties agreed that the only issue before the ALJ was the correct multiplier to be applied to Rudd's benefits. The ALJ acknowledged that the parties originally agreed that no multiplier would apply. But Rudd argued that changes in the caselaw placed the modifier application at issue.

Rudd referred to our recent decision in *Livingood v. Transfreight, LLC*, 467 S.W.3d 249 (Ky. 2015), which overruled the holding in *Chrysalis House, Inc. v. Tackett*, 283 S.W.3d 671 (Ky. 2009), that a work-related disability must

be the reason for an employee's cessation of employment in order to afford application of the two-multiplier. Instead, *Livingood* held that "KRS 342.730(1)(c)2 permits a double income benefit during any period that employment at the same or a greater wage ceases 'for any reason, with or without cause,' except where the reason is the employee's conduct shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another." 467 S.W.3d at 259 (quoting KRS 342.730(1)(c)2).

Rudd argued that, since her cessation from work was not due to intentional or reckless misconduct, that being the only restriction on a claimant's ability to recover under the statute, she should be entitled to the two-multiplier. In other words, because voluntary retirement constitutes a "cessation of employment . . . for any reason" and does not constitute intentional or reckless misconduct under *Livingood*, she qualified for the two-multiplier.

The ALJ agreed, concluding she was "bound by the plain wording" of the statute and this Court's holding in *Livingood*, with the only purported restriction on application of the two-multiplier being the employee's intentional or reckless misconduct. The Workers' Compensation Board ("Board") and the Court of Appeals affirmed the ALJ's decision. Active Care Chiropractic's ("Active Care") appeal to this Court followed. *See* Ky. Const. § 115.

## II. STANDARD OF REVIEW.

We review statutory interpretation *de novo*. *Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). The well-established standard for reviewing a workers' compensation decision is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992). Finally, review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 688.

## III. ANALYSIS.

KRS 446.080(1) directs that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature[.]" This Court's goal, in construing statutes, "is to give effect to the intent of the [legislature]. We derive that intent . . . from the language the [legislature] chose, either as defined by the [legislature] or as generally understood in the context of the matter under consideration." *Livingood*, 467 S.W.3d at 256 (internal quotations and citations omitted). "General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy." *Cty. of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky. 2002). However, when construing provisions to match

4

objectives of whole statutes, "[w]e have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Livingood*, 467 S.W.3d at 257–58 (internal citations and quotations omitted). Moreover, "'it is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there.'" *Wilson v. SKW Alloys, Inc.*, 893 S.W.2d 800, 802 (Ky. App. 1995) (quoting *Gateway Constr. Co. v. Wallbaum*, 356 S.W.2d 247, 248–49 (Ky. 1962)).

The plain language of KRS 342.730(1)(c)2 unquestionably supports Rudd's position: "During *any period of cessation of . . . employment, temporary or permanent, for any reason, with or without cause*," a claimant shall be awarded permanent-partial disability benefits as modified by the two-multiplier. (emphasis added). Taken at face value, Rudd's argument, that voluntary retirement and removal from the workforce for reasons not solely related to the workplace injury qualifies as "cessation of . . . employment . . . for any reason" and affords the application of the two-multiplier to benefits received, is supported by the language of the statute.

Active Care argues that this Court should disregard this unambiguous language and carve out an exception akin to the intentional misconduct exception from *Livingood*. In *Livingood*, we noted the "legislative intent in KRS Chapter 342 that an employee should not benefit from his own wrongdoing." 467 S.W.3d at 258. The many examples throughout Chapter 342 barring compensation due to wrongdoing by the employee exemplify this legislative

5

intent and support the exception fashioned in *Livingood*. *See* KRS 342.035(3) (denying compensation for unreasonable failure to follow medical advice); 342.165(2) (denying compensation when employee knowingly and willingly makes a false representation regarding physical condition at time of employment); 342.610(3) (denying compensation when injury occurs due to voluntary intoxication or willful intent to injure oneself or another).

In the present case, absent any evidence of Rudd's intentional or reckless wrongdoing, no exception to the unambiguous language of KRS 342.730(1)(c)2 precludes the recovery of the two-multiplier. Indeed, voluntary retirement cannot possibly be construed as "an intentional, deliberate action with a reckless disregard of the consequences." *Livingood*, 467 S.W.3d at 259. Instead, voluntary retirement falls squarely within the statute as a "cessation of . . . employment . . . for any reason, with or without cause[.]" KRS 342.730(1)(c)2.

As stated previously, we have a "duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Livingood*, 467 S.W.3d at 257–58. In *Livingood*, we determined that allowing an employee to "benefit from his own wrongdoing" would lead to such a wholly unreasonable result based upon the whole of Chapter 342. *Id.* at 257. Here, however, a literal construction of KRS 342.730(1)(c)2 prescribes that Rudd receive the two-multiplier because voluntary retirement is a "cessation of . . . employment . . . for any reason," and does not lead to an absurd or unreasonable result in conjunction with the rest

6

of Chapter 342, unlike intentional misconduct, even if the purpose of the statute is to "encourage continued employment," as *Livingood* noted in dicta. *Id.*

Thus, when an individual voluntarily chooses to retire, a decision made for reasons not solely related to that individual's work-related injury, that individual is entitled to the two-multiplier listed in KRS 342.730(1)(c)2. Such a conclusion complements our decision in *Livingood*, a case in which we recognized an appropriate limitation on the use of KRS 342.730(1)(c)2's two-multiplier in accordance with other provisions of KRS Chapter 342.

## IV. CONCLUSION.

A workers' compensation claimant is entitled to a two-multiplier under KRS 342.730(1)(c)2 when that individual voluntarily chooses to retire. Accordingly, the judgment is affirmed.

All sitting. Cunningham, Hughes, Keller, VanMeter, Venters, and Wright, JJ., concur. Minton, C.J., dissented with opinion.

MINTON, C.J., DISSENTING: Today the Court introduces a strictly textualist reading of KRS 342.730(1)(c)(2) to give Katherine Rudd, who voluntarily removed herself from the workforce for reasons completely unrelated to a work-related injury, enhanced workers' compensation benefits. In my view, the majority's new approach leads to an absurd result, a result contrary to the legislative purpose of the workers' compensation statutes that we have recognized in our recent decisions. Respectfully, I must dissent.

The plain language of KRS 342.730(1)(c)(2) undoubtedly supports Rudd's and the majority's position: "During *any period of cessation of . . . employment, temporary or permanent, for any reason, with or without cause,*"[3] a claimant shall be awarded permanent-partial disability benefits as modified by the two-multiplier. Taken at face value, Rudd's argument, that voluntary retirement and removal from the workforce for reasons unrelated to the workplace injury qualifies as "cessation of . . . employment . . . for any reason" and triggers application of the two-multiplier to benefits received, appears to be supported by the language of the statute.

But KRS 446.080(1) mandates that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature . . .."[4] "In construing statutes, our goal . . . is to give effect to the intent of the [legislature]. We derive that intent. . . from the language the [legislature] chose, either as defined by the [legislature] or as generally understood in the context of the matter under consideration."[5] "General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy."[6]

---

[3] (emphasis added).

[4] *Livingood v. Transfreight, LLC*, 467 S.W.3d 249, 256 (Ky. 2015).

[5] *Id.* (quoting *Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky. 2011)).

[6] *County of Harlan v. Appalachian Reg'l Healthcare, Inc.*, 85 S.W.3d 607, 611 (Ky. 2002).

Even more importantly, "Generally speaking, when interpreting statutes, this court focuses on 'giv[ing] the words of the statute their literal meaning *and effectuat[ing] the intent of the legislature.' But even if the language is clear, we will not promote an absurd result.*"[7] "We have a duty to accord to words of a statute their literal meaning *unless to do so would lead to an absurd or wholly unreasonable conclusion.*"[8] Moreover, "The legislature's intention 'shall be effectuated, *even at the expense of the letter of the law.*'"[9]

"It has long been established that the purpose of awarding income benefits to injured workers is to provide an ongoing stream of income to enable them to meet their essential needs and those of their dependents."[10] "KRS 342.730(1) provides income benefits to replace some of the wages that workers lose due to the occupational effects of work-related injuries."[11] "Consistent with . . . KRS 342.710(1)'s goal of encouraging a return to work, KRS 342.730(1)(c)2 focuses on post-injury wages."[12] "The purpose of KRS 342.730(1)(c)2 is to keep partially disabled workers in the habit of working and earning as much as they are able. It creates an incentive for them to return to work at which they will earn the same or a greater average weekly wage by permitting them to receive a

---

[7] *Mills v. Department of Corrections Offender Information Services*, 438 S.W.3d 328, 330 (Ky. 2014) (quoting *Samons v. Kentucky Farm Bureau Mut. Ins. Co.*, 399 S.W.3d 425, 429 (Ky. 2013)).

[8] *Bailey v. Reeves*, 662 S.W.2d 832, 834 (Ky. 1984).

[9] *Cosby v. Commonwealth*, 147 S.W.3d 56, 58–59 (Ky. 2004) (quoting *Commonwealth v. Rosenfield Bros & Co.*, 80 S.W. 1178, 1180 (Ky. 1904)).

[10] *Ball v. Big Elk Creek Coal Co.*, 25 S.W.3d 115, 117 (Ky. 2000).

[11] *Toy v. Coca Cola Enterprises*, 274 S.W.3d 433, 434–35 (Ky. 2008).

[12] *Id.* at 435.

basic benefit in addition to their wage but assuring them of a double benefit if the attempt proves to be unsuccessful."[13]

In addition to the above-listed purposes of KRS 342.730(1)(c)(2), in *Livingood*, we acknowledged "[KRS 342.730(1)(c)(2)'s] *obvious purpose of encouraging continued employment.*"[14]

Awarding an individual who has voluntarily chosen to retire and remove herself from the workforce a two-multiplier on her permanent-partial disability benefits is completely inconsistent with the purpose of KRS 342.730(1)(c)(2). Awarding a voluntary retiree a two-multiplier flies in the face of the purpose of KRS 342.730(1)(c)(2), which is "to keep partially disabled workers in the habit of working and earning as much as they are able."[15] Such a windfall does not "create[] an incentive for them to return to work,"[16] nor does it "encourag[e] continued employment."[17] Rather, contrary to these purposes, doubling the wage-loss benefits of those who choose voluntarily to retire and remove themselves from the workforce for reasons unrelated to the work-related injury creates the opposite incentive, i.e. to choose to retire rather than to attempt to work.

The majority's result is not only absurd, but flies in the face of the intent of the workers' compensation statutory framework. *Livingood* is a recent

---

[13] *Id.* at 435.

[14] *Livingood*, 467 S.W.3d at 257 (emphasis added).

[15] *Toy*, 274 S.W.3d at 435.

[16] *Id.*

[17] *Livingood*, 467 S.W.3d at 257.

unanimous decision by this Court that did exactly what I urge that we do here—read KRS 342.730(1)(c)(2) in a way that differs from the plain text to effectuate the purpose of workers' compensation. Instead of the employer voluntarily retiring from the workforce for reasons unrelated to workplace injury, as in our case today, the employer in *Livingood* was let go for, in part, negligent conduct.[18] He made the same claim Rudd makes here—the statute says a double multiplier shall be applied for any cessation of employment whatsoever.[19]

The Court cited all the statutory canons of construction calling for effectuating the intent of the legislature that I have, and more, in its analysis.[20] The Court then overruled our prior holding in *Chrysalis House, Inc. v. Tackett*,[21] which stated that a double multiplier shall be applied only if the cessation is related to the workplace injury.[22]

Importantly, the Court was very specific as to why it was overruling *Chrysalis House*: "Requiring that the cessation of employment at the same or greater wage must relate to the disabling injury *does not promote the statute's obvious purpose of encouraging continued employment.* Moreover, such a construction *does little to discourage employers from taking workers back after*

---

[18] *Id.* at 253.

[19] *Id.* at 255.

[20] *Id.* at 256–58.

[21] 283 S.W.3d 671 (Ky. 2009).

[22] *Livingood*, 467 S.W.3d at 257 (citing *Chrysalis House*, 283 S.W.3d at 674).

*an injury just long enough to avoid liability for a greater award.*"[23] In other words, the Court first identified that the *Chrysalis House* holding should be overruled, *not because of the language of the statute, but because the holding did not effectuate the intent of the legislature.*

The Court then went on to analyze the actual language of the statute, finding that the language supported its overruling of *Chrysalis House*. But most importantly, we said this: "Nevertheless, *a literal construction of KRS 342.730(1)(c)(2) would lead to an unreasonable result if an employee . . . is allowed to benefit from his own wrongdoing.*"[24] We then went on to find evidence of legislative intent in other provisions of Chapter 342 that punished an employee for wrongdoing, and came to the conclusion "that the legislature did not *intend* to reward an employee's wrongdoing with a double benefit."[25] Finally, we held "that KRS 342.730(1)(c)(2) permits a double-income benefit during any period that employment at the same or a greater wage ceases 'for any reason, with or without cause,' except where the reason is the employee's conduct shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another."[26] The latter language of that holding, beginning with "except where the reason is . . .", was entirely inserted into the language of the statute by this Court and is nowhere to be found in KRS 342.730(1)(c)(2).

---

[23] *Livingood*, 467 S.W.3d at 257.

[24] *Id.*

[25] *Id.* at 259.

[26] *Id.*

My point with this detailed discussion of what we unanimously said in *Livingood* is to show two very pertinent instances in which this Court departed from the literal language of the same text at issue today to effectuate the intent of the workers' compensation statute. By the logic of the majority in this case, *Livingood* has been clearly overruled because we added language to KRS 342.730(1)(c)(2) that is not there to effectuate the intent of the statute in that case.[27]

The fact of the matter is that the Court in *Livingood did not apply a strict reading of KRS 342.730(1)(c)(2)*; instead, the Court did literally the same thing I am espousing here—read KRS 342.730(1)(c)(2) to effectuate legislative intent and not render an absurd result. And the fact that the *Livingood* Court had to go outside KRS 342.730(1)(c)(2) to piecemeal language from other provisions to support its holding supports the assertion that effectuating legislative intent is more important than following the literal words of the statute, when following the literal words renders an "absurd or wholly unreasonable conclusion."[28]

Not only has the majority overlooked our statutory canons, but it has also completely contradicted itself in this case when compared to *Livingood*. For these reasons, I must respectfully dissent. The majority's result should signal to the General Assembly that a change is needed to remedy the reach of the majority's conclusion.

---

[27] I believe *Livingood* to be the correct decision. Nothing in this dissent should be construed to make the reader believe that I disagree with *Livingood*.

[28] *Bailey*, 662 S.W.2d at 834.

COUNSEL FOR APPELLANT:

Richard Christion Hutson
Whitlow, Roberts, Houston & Straub, PLLC
300 Broadway
P.O. Box 995
Paducah, KY 42002-0995

COUNSEL FOR APPELLEE: KATHERINE RUDD

Mark Lane Ashburn
535 Broadway
P.O. Box 268
Paducah, KY 42002-0268