# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

$\mathfrak{Supreme\ Court\ of\ Kentucky}$

2019-SC-000272-WC

JENNIFER CREAGER                                                                    APPELLANT

ON REVIEW FROM COURT OF APPEALS
V.                           CASE NO. 2018-CA-000873-WC
WORKERS' COMPENSATION BOARD NO. 16-WC-00561

FORD MOTOR COMPANY (LAP);                                       APPELLEES
TANYA PULLIN, ADMINISTRATIVE LAW
JUDGE; AND
WORKERS' COMPENSATION BOARD

**MEMORANDUM OPINION OF THE COURT**
**AFFIRMING**

Jennifer Creager's workers' compensation case was dismissed after a

hearing before Administrative Law Judge (ALJ) Miller for lack of proof of causal

connection between two work incidents and her impairments. Having reviewed

the record and applicable law, we affirm the Court of Appeals which upheld the

dismissal of her claim.

## I. BACKGROUND

Jennifer Creager is a 47-year-old female who has a high school diploma

and two years of college education. From 1992 until the alleged incidents,

Creager worked for Ford Motor Company in the paint repair department.

Creager had a history of back and neck conditions which were significant

enough for her to seek medical treatment prior to the dates in question. In

2004, Creager underwent an L5-S1 discectomy to treat low back pain.

Approximately five years later, in 2009, she began treating with Dr. Jeffrey

Berg for pain management and ongoing back pain. Her treatment included epidural injections, trigger point injections, cervical traction and the use of neck collars, physical therapy and daily narcotics to manage her pain.

While treating Creager for her lower back symptoms, Creager complained to Dr. Berg of neck problems. On November 19, 2014, Creager informed Dr. Berg that a few months earlier, she began suffering cervical pain. Her chief complaint was "Right shoulder pain with numbness and tingling down right arm into rt palm ad rt thumb and first 2 fingers, c/o pain starts right buttock pain goes down right leg…also lower back pain." On December 4, 2014, Dr. Berg ordered a cervical MRI and continued to treat Creager's cervical issues conservatively. The MRI revealed disc protrusions at C5-C6 and C6-C7 with moderate to severe right foraminal narrowing. Three days prior to the first work incident in February 2015, Dr. Berg noted that Creager continued to have increasing cervical, shoulder and right arm pain. He recommended epidural shots and physical therapy.

Creager alleges two work-related injuries. The first injury occurred on February 23, 2015. Creager stated she was raising a heat lamp and felt a sharp pain in the back of her head, neck, upper back and into her right arm. She subsequently received treatment at the Ford medical facility and followed up with Dr. Berg. Creager sought treatment with Dr. Berg four days after this incident. However, his notes indicated Creager presented with cervical and right shoulder and right arm pain resulting from a physical therapy appointment that aggravated her symptoms, with no mention of the work incident.

The second work incident Creager complains of occurred on September 15, 2015. Creager testified that she attempted to lower a lift gate when she felt

a jerk in her neck, right shoulder and right arm. Creager stated she experienced neck pain with symptoms radiating down her right upper extremity as well as back pain. Additionally, she noted an increase of her low back symptoms.

Following the September 2015 incident, Creager was referred to Dr. Thomas Becherer, a neurosurgeon. Dr. Becherer noted that she had a history of lumbar surgery and she complained of neck and right shoulder pain and tingling in her forearms and first three fingers and low back pain. Based on her MRI, Dr. Becherer recommended Creager undergo C5-C7 anterior cervical discectomy and fusion surgery. Dr. Becherer performed two surgeries: first, a lumbar laminectomy-discectomy, then a multi-level cervical fusion. Ultimately, Dr. Becherer placed Creager at maximum medical improvement (MMI) and released her to return to full work duty. She returned to work at Ford in a new position as a job security representative.

Dr. Stacie Grossfeld examined Creager for an independent medical examination (IME) on August 1, 2016. Dr. Grossfeld diagnosed preexisting active conditions of degenerative joint disease involving the cervical and lumbar spines with a cervical disc protrusion that had intensified with time. Dr. Grossfeld noted that Creager had been undergoing pain management therapies, including prescribed narcotics regarding active conditions in both areas.

Dr. Grossfeld assigned a 5% impairment rating for the cervical and lumbar conditions, however she indicated that neither injury was work-related. Dr. Grossfeld opined that all medical treatment related to Creager's active and pre-existing conditions, as follows:

In summary, her current symptoms of neck and low back symptoms appear to be the natural progression of the natural history of her preexisting active condition involving her cervical and lumbar spine. She was on high dose narcotic. She was receiving epidural injections. She was receiving intravenous Versed, received Robaxin trigger point injections on a regular basis prior to her work injury.

Dr. Grossfeld later completed a supplemental report in which she disagreed with Dr. Warren Bilkey's causation conclusion and stated:

Based on basic orthopedic knowledge, the MRI results, and medical records; it is clearly revealed that the causation was NOT work related. The causation is based on her pre-existing disease and the natural progression of the cervical and lumbar degenerative disc disease.

Creager filed a claim for workers' compensation benefits alleging work-related injuries to her neck and low back relating to both the February 23, 2015 and September 15, 2015 incidents. Ford denied the claims, asserting a lack of causation.

After a hearing, ALJ Miller rendered an order and opinion dismissing Creager's claim. ALJ Miller found:

There can be no question, after a complete review of the medical evidence, that Ms. Creager was having ongoing symptoms of cervical pain, with very similar findings on MRIs, both before and after the work incident of 2/23/2015 and 09/15/2015. I find the incidents of 02/23/2015 and 09/15/2015, were not the cause of her need for medical treatment, either as an original injury or an (sic) "re-aggravation" of the pre-existing conditions. For this finding I rely primarily on Dr. Berg's office chart/notes.

Creager filed a motion to reconsider. In an order on reconsideration, ALJ Pullin agreed that Creager failed to establish work-related injuries. Creager then appealed to the Worker's Compensation Board (the Board) which affirmed the ALJ's order. Upon further review, the Court of Appeals affirmed.

## II. STANDARD OF REVIEW

When the ALJ finds against the party having the burden of proof, the appellant must then "show that the ALJ misapplied the law or that the evidence in her favor was so overwhelming that it compelled a favorable finding."[1] In *Active Care Chiropractic, Inc. v. Rudd*, we noted the proper standard of review for workers' compensation decisions.

> We review statutory interpretation *de novo*. The well-established standard for reviewing a workers' compensation decision is to correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice. Finally, review by this Court is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude.[2]

It is within the broad discretion of the ALJ "to believe part of the evidence and disbelieve other parts of the evidence whether it came from the same witness or the same adversary party's total proof."[3] The ALJ is the sole fact finder of all workers' compensation claims.[4] "KRS 342.285 designates the ALJ as finder of fact and has been construed to mean that the fact-finder has the sole discretion to determine the quality, character, weight, credibility, and substance of the evidence, and to draw reasonable inferences from the evidence."[5] An ALJ abuses its discretion when the decision is "arbitrary,

[1] *Gray v. Trimmaster*, 173 S.W.3d 236, 241 (Ky. 2005) (citing *Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986)).

[2] 556 S.W.3d 561, 564 (Ky. 2018) (internal quotations and citations omitted).

[3] *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

[4] Kentucky Revised Statute (KRS) 342.285(1).

[5] *Bowerman v. Black Equipment Co.*, 297 S.W.3d 858, 866 (Ky. App. 2009).

unreasonable, unfair or unsupported by sound legal principles."[6] "It has long been the rule that the claimant bears the burden of proof and the risk of nonpersuasion before the fact-finder with regard to every element of a workers' compensation claim."[7] The claimant bears the burden of persuasion before the ALJ, and it is up to the claimant to prove every element of their claim.

## III. ANALYSIS

This Court has consistently held that if there is substantial evidence in the record to support the ALJ's findings, the findings will be upheld, even if there is conflicting evidence in the record.[8] Here, the ALJ thoroughly reviewed multiple medical providers records, narrative reports, and IME reports regarding Creager's causality regarding any work-related injuries. The ALJ weighed the credibility of all the medical opinions, including all the evidence presented by both parties. In *Caudill*, this Court opined that the ALJ may believe or disbelieve any testimony even if it came from the same witness.[9]

The claimant bears the burden to persuade the ALJ that she suffered from work-related injuries.[10] An employer is not responsible for a pre-existing active condition that was ongoing at the time of a work-related incident.[11] And when there is an active pre-existing condition, there is a means for calculating the increase in impairment related to any work-related injury.[12]

---

[6] *Id.*

[7] *Magic Coal Co. v. Fox*, 19 S.W.3d 88, 96 (Ky. 2000).

[8] *Kentucky Comm'n on Human Rights v. Fraser*, 625 S.W.2d 852, 856 (Ky. 1981).

[9] 560 S.W.2d at 16.

[10] *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735 (Ky. App. 1984).

[11] *McNutt Const./First Gen. Servs. v. Scott*, 40 S.W.3d 854 (Ky. 2001).

[12] *Finley v. DBM Technologies*, 217 S.W.3d 261 (Ky. App. 2007).

Ford was able to present substantial evidence to support dismissal as Creager had extensive medical records involving her back and neck pain. Creager contends the Board erred in affirming the ALJ's decision in finding no work-related injuries and she now must establish that the ALJ's findings were clearly erroneous to warrant reversal.[13] An agency's findings are clearly erroneous if arbitrary or unsupported by substantial evidence in the record.[14]

In rebuttal of Dr. Grossfeld's IME opinions, Creager relies on Dr. Bilkey, who assessed that Creager had sustained two work-related injuries. Dr. Bilkey apportioned a range of fifteen to eighteen percent impairment as to Creager's cervical condition and that half was a pre-existing active condition or nine percent. Dr. Bilkey assessed Creager's lumbar spine condition with a twenty-two percent impairment with half due to the work-related injury or eleven percent. Combining impairments, Dr. Bilkey assessed Creager with a nineteen percent whole person impairment relating to both injuries.

Dr. Bilkey provided an additional report on July 11, 2017, where he reiterated that the injuries were work-related and assessed a twenty-eight percent whole person impairment solely attributable to the two incidents. Creager continues to largely rely on Dr. Bilkey's assessments.

This difference of opinions is Creager's argument to establish that the ALJ made critical error in her decision to dismiss Creager's claim for benefits. Creager notes that in addition to Dr. Bilkey's IME reports, Dr. Berg provided a letter in February 2016 stating that the worsening spinal conditions were caused by work-related repetitive lifting and bending.

---

[13] *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).
[14] *Ky. Comm'n on Human Rights*, 625 S.W.2d at 856.

However, Creager has failed to establish that the ALJ's findings were arbitrary or unsupported by substantial evidence. The Board's opinion affirming the ALJ thoroughly examined the record, including the pre-existing conditions observed by Dr. Berg and Dr. Grossfeld. The Board's opinion specifically stated:

> ALJ Pullin also relied upon Dr. Berg's treatment records, as well as the opinions of Dr. Grossfeld, in overruling Creager's petition for reconsideration. Dr. Grossfeld's opinion, in conjunction with Dr. Berg's treatment records, constitute substantial evidence supporting the determination Creager failed to prove her cervical and lumbar conditions are related to the February 23, 2015 and September 15, 2015 work injuries. We find the ALJ acted within the scope of the deference afforded to her, and a contrary result is not compelled.
>
> We acknowledge Creager is able to point to conflicting evidence supporting her position on appeal. However, the ALJ as fact-finder determines the credibility of the evidence. It was the ALJ's prerogative to rely on Dr. Berg's treatment records and Dr. Grossfeld's opinions in making her determination. Therefore, her decision will not be disturbed.

The ALJ has the authority to thoroughly analyze each individual claim and find one opinion more persuasive than the other. Here, the ALJ and Board thoroughly reviewed this case, and deemed that there was substantial evidence provided to support a decision to dismiss Creager's claim. "If the reviewing court concludes the rule of law was correctly applied to facts supported by substantial evidence, the final order of the agency must be affirmed."[15]

Additionally, Creager contends that the ALJ, the Board and the Court of Appeals erroneously applied *Finley* in determining her pre-existing conditions

---

[15] *Kentucky Unemployment Ins. Comm'n v. Cecil*, 381 S.W.3d 238, 246 (Ky. 2012) (citing *Brown Hotel Co. v. Edwards*, 365 S.W.2d 299 (Ky. 1962)).

were "impairment ratable." Creager claims that *Finley* requires a numerical impairment rating before establishing an active pre-existing condition. Creager argues that the ALJ failed to discuss any impairment rating, and since there was no numerical rating there is no pre-existing condition.

In reviewing the analysis by ALJ Pullin and ALJ Miller, we agree that *Finley* was correctly considered in the present case. Specifically, ALJ Miller noted that Creager did not sustain a work-related injury, therefore pre-existing active impairment pursuant to *Finley* was not required to be addressed. ALJ Pullin further addressed *Finley* opining, "[c]ertainly disc protrusions and surgeries make Appellant's pre-existing cervical and lumbar spine conditions impairment ratable just prior to the alleged injury dates..." This Court has held that consistent with *Finley* an active pre-existing condition must be both symptomatic and impairment ratable pursuant to the American Medical Association's *Guidelines* immediately before any work-related injury.[16] Therefore, because Creager failed to meet the work-related threshold, *Finley* is not applicable.

## IV. CONCLUSION

Having reviewed the record, we find no error. The ALJ's factual findings were supported by substantial and credible evidence, and the ALJ's conclusion was the result of an appropriate application of the authorities to those facts.

---

[16] *Wetherby v. Amazon.com*, 580 S.W.3d 521, 527 (Ky. 2019) (citing *Finley*, 217 S.W.3d at 265).

The Board properly adopted the findings of the ALJ and the Court of Appeals did not err in affirming the Board's opinion. We likewise affirm the Court of Appeals.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Wayne C. Daub
Louisville, Kentucky

COUNSEL FOR APPELLEE:

George T. Kitchen, III
Louisville, Kentucky

COUNSEL FOR WORKERS' COMPENSATION BOARD:
Michael W. Alvey
Frankfort, Kentucky

ADMINISTRATIVE LAW JUDGE:
Hon. Tanya Gaye Pullin
Frankfort, Kentucky