**Alton LIVINGOOD, Appellant**

v.

**TRANSFREIGHT, LLC, et al., Appellee**

2014–SC–000100–WC

Supreme Court of Kentucky.

RENDERED: August 20, 2015

COUNSEL FOR APPELLANT: Larry Duane Ashlock, Esq., Morgan & Morgan

COUNSEL FOR APPELLEE: Walter A. Ward, Donnie James Niehaus, Ward, Hocker, Thornton, PLLC, Lexington

OPINION OF THE COURT BY
JUSTICE BARBER

This workers' compensation appeal involves entitlement to temporary total disability ("TTD") benefits during a period of light-duty work and application of the two multiplier, KRS 342.730(1)(c)2. The ALJ denied both. The Workers' Compensation Board ("Board") and the Court of Appeals affirmed. We affirm the denial of TTD benefits and reverse and remand with respect to the two multiplier, because our analysis here today convinces us to reconsider the holding in *Chrysalis House, Inc. v. Tackett*, 283 S.W.3d 671 (Ky.2009).

## I. BACKGROUND

Appellant, Alton Livingood ("Livingood"), injured his left shoulder on September 16, 2009, while working as a certified forklift operator for Appellee, Transfreight, LLC ("Transfreight"). He underwent two shoulder surgeries and was off work from November 11, 2009, through March 2, 2010. He returned to light duty from March 3, 2010, through October 5, 2010. Livingood subsequently underwent a third shoulder surgery and was off work again from October 6, 2010, through December 12, 2010. TTD benefits were paid for the periods he was off work.

On December 13, 2010, Livingood returned to work without restrictions. Four hours into his shift, Livingood accidentally bumped into a pole while operating the forklift in an unfamiliar area. There was no damage. At the time of the incident, Livingood was still under a physician's care and taking prescribed Lortab. On December 23, 2010, Transfreight terminated his employment.

Livingood testified that "[t]hey said I should have been paying more attention to what I was doing, and they fired me." Stephanie Baldwin, Transfreight's human resources business partner, testified that Transfreight has a progressive discipline policy "that from infraction to infraction, we either go directly to the next step or depending upon the matter, we can skip steps." Ms. Baldwin thought that the forklift incident was the third incident. It was a "preventable accident, ... deemed to be relative." But, in Livingood's case, he was already on "full and final warning" status with the next step being termination when the forklift incident occurred. Otherwise, his employment would have continued.

On December 18, 2011, Livingood started working for Vogt Management packing post-it notes at $8.50 an hour. Livingood testified that he would have had to work two weeks at Vogt to get close to what he had earned in one week at Transfreight.

On August 15, 2012, the ALJ rendered an Opinion, Award & Order. It reflects a stipulated average weekly wage ("AWW") of $550.43. The ALJ noted that Livingood's hourly rate remained $13.25 from the time of the injury until his termination. While on light duty, Livingood "was on the payroll at his regular rate of pay." His light-duty activities included:

changing batteries in forklifts and monitoring restrooms to see who was writing on walls. In addition, he was given an

assignment to find freight that was in the wrong place, write it down and have the forklift operators move it. He estimated that he spent 50% of his time changing batteries, 25% of his time monitoring bathrooms and 25% going around and making sure everything was in the right place. Even before his injury, he performed the "misplaced freight" duties on a daily basis. Prior to the injury [Livingood] also had the job of changing batteries for about a five month period.... Immediately before his injury, however, he operated a forklift 100% of the time....

The ALJ denied Livingood's request for TTD benefits while he was on light duty. Except for bathroom monitoring, Livingood had performed the other activities before the injury; further, they were not a make-work project. The ALJ was not persuaded that Livingood was terminated due to his disabling shoulder injury and declined to award the two multiplier under KRS 342.730(1)(c)2 and *Chrysalis House v. Tackett*, 283 S.W.3d 671 (2009). The ALJ awarded permanent partial disability ["PPD"] benefits in the amount of $11.93 per week, based upon a straight 5% impairment rating. Livingood filed a petition for reconsideration contending, *inter alia,* that the ALJ erred in not awarding the two multiplier. By Order of September 18, 2012, the ALJ denied the petition for reconsideration.

Livingood appealed to the Board, which affirmed by Opinion rendered January 25, 2013. The Board disagreed with Livingood's argument that he was entitled to additional TTD benefits while he was on light duty:

Pursuant to KRS 342.0011(11)(a), in order for a claimant to be entitled to TTD benefits, he must satisfy a two-prong test: (1) he must not have reached maximum medical improvement ("MMI");

and (2) he must not have reached a level of improvement that would permit his return to employment. *Double L Constr., Inc. v. Mitchell,* 182 S.W.3d 509, 513 (Ky. 2005). A release to perform minimal work rather than the type that is customary or that the employee was performing at the time of the injury does not constitute "a level of improvement that would permit a return to employment" under KRS 342.0011(11)(a). *Id.* at 514 (citing *Cent. Kentucky Steel v. Wise,* 19 S.W.3d 657, 659 (Ky.2000)). However, during his return to work, Livingood was paid the same wage he was paid prior to his injury. The ALJ found that a majority of Livingood's work during this time was work he had been trained to do, and ... had previously performed for the employer..... In total, 75% of Livingood's post-injury work was work he customarily and regularly performed for his employer pre-injury. The ALJ found that Livingood had therefore not satisfied the second prong of the KRS 342.0011(11)(a) test for TTD benefits. We are not persuaded that the evidence in the record renders the ALJ's finding unreasonable or compels a different outcome.

The Board found no error in the ALJ's decision not to award the two multiplier under KRS 342.730(1)(c)(2).

[T]he Kentucky Supreme Court has held that KRS 342.730(1)(c)(2) only permits a double income benefit when employment ceases for a reason relating to the disabling injury. *Chrysalis House, Inc. v. Tackett,* 283 S.W.3d 671, 674 (Ky.2009). Livingood was ultimately let go due to the December 13, 2010 forklift incident. He claims this incident actually was a result of his injury.... Transfreight's human resources representative testified that but for multiple prior infractions, the forklift incident would not have re-

sulted in Livingood's termination. The ALJ ultimately decided that the termination was unrelated to Livingood's injury. This decision was within the ALJ's discretion and was not unreasonable in light of the evidence presented.

By Opinion rendered January 31, 2014, the Court of Appeals affirmed. The Court of Appeals was not convinced that the ALJ had misapplied the law or misinterpreted the evidence.

## II. ANALYSIS

█ Livingood contends that he was entitled to additional TTD from March 3, 2010, until October 5, 2010, while on light duty, because he did not perform his customary work as a forklift operator. KRS 342.0011(11)(a) defines TTD as "the condition of an employee who has not reached maximum medical improvement from an injury and has not reached a level of improvement that would permit a return to employment." Livingood relies upon *Central Kentucky Steel v. Wise*, 19 S.W.3d 657 (Ky.2000) and *Double L Construction, Inc., v. Mitchell*, 182 S.W.3d 509 (Ky.2005). Both are distinguishable on their facts. *Double L Construction* involved concurrent employment which is not at issue here.[1]

In *Wise*, the employee was not working during the period TTD was in issue. Wise, an ironworker, fractured his arm on April 28, 1997. The employer voluntarily paid TTD through August 1, 1997. At the end of September 1997, Wise moved to Florida and started working for a different employer. His treating physician did not assign MMI until October 28, 1997. The ALJ awarded TTD benefits through September 30, 1997. The employer argued that under KRS 342.0011(11)(a), TTD should have been terminated in July 1997, when the treating physician would have allowed Wise to return to work with a five-pound lifting restriction. The Court disagreed, because "[i]t would not be reasonable to terminate the benefits of an employee when he is released to perform minimal work but not the type that is customary or that he was performing at the time of his injury." *Id.* at 659.

█ As the Court explained in *Advance Auto Parts v. Mathis*, No. 2004–SC0146–WC, 2005 WL 119750, at *3 (Ky. Jan. 20, 2005), and we reiterate today, *Wise* does not "stand for the principle that workers who are unable to perform their customary work after an injury are always entitled to TTD." Livingood had the burden of proof on the issue. Where the ALJ finds against the party with the burden of proof, the standard of review on appeal is whether the evidence compelled a contrary finding. *FEI Installation, Inc. v. Williams*, 214 S.W.3d 313 (Ky.2007). The Board and the Court of Appeals were not convinced that it did. Nor are we. "The

---

1. There, the claimant was injured in his full-time job as a carpenter. He had a second job as a janitor 15 hours a week. The employer argued that the claimant was not entitled to TTD, because he had worked continuously as a janitor after the injury, although he could not perform his carpentry job. The Court disagreed:

> [A] worker is entitled to TTD benefits if a work-related injury results in a temporary inability to perform the job in which it occurred. If the injury also causes an inability to perform a concurrent job of which

the employer has knowledge, income benefits are based on the wages from both ... by operation of KRS 342.140(5). If the injury does not cause an inability to perform a concurrent job, ... income benefits are based solely on the wages from the job in which the injury occurred. In contrast, if a work-related injury does not prevent the worker from performing the job in which it occurred, the worker is not entitled to TTD despite an inability to perform a concurrent job.

*Id.* at 514–15 (footnote omitted).

function of further review in our Court is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Western Baptist v. Kelly,* 827 S.W.2d 685, 688 (Ky.1992).

Livingood also contends that he should have been awarded the two multiplier pursuant to KRS 342.730(1)(c)2 which provides:

> If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

The Board observed that it would appear "this statute provides for a doubled benefit anytime a cessation of employment at the same or greater wage occurs," but that as construed in *Chrysalis House,* KRS 342.730(1)(c)2 only permits a double income benefit when the reason relates to the disabling injury.

In *Chrysalis House,* the claimant worked at a residential substance abuse treatment center. He was discharged for stealing a money order belonging to one of the residents. The ALJ determined that the claimant stole the money order, endorsed and cashed it, but that it was irrelevant for purposes of KRS 342.730(1)(c)2. On appeal, the employer argued that the legislature did not intend for the words "with or without cause" to supersede Kentucky's longstanding policy preventing individuals from profiting from their illegal acts; further, that to construe the statute in a way that encourages illegal conduct would be contrary to public policy. The Board and the Court of Appeals affirmed the ALJ's decision based on the unambiguous language of KRS 342.730(1)(c)2. This Court reversed:

> We presume when interpreting a statute that the legislature intended for it to mean exactly what it says. Although ambiguous language must be interpreted based on legislative purpose and intent, unambiguous language requires no interpretation. Yet, nothing requires a statute's subsection to be read in a vacuum rather than in the context of the entire statute.
>
> KRS 342.730(1)(c)2 appears at first blush to provide clearly and unambiguously for a double benefit during a period of cessation of employment at the same or a greater wage "for any reason, with or without cause." It is, however, a subsection of KRS 342.730(1), which authorizes income benefits to be awarded for "disability" that results from a work-related injury. We conclude for that reason that, when read in context, KRS 342.730(1)(c)2 permits a double income benefit during any period that employment at the same or a greater wage ceases "for any reason, with or without cause," provided that the reason relates to the disabling injury.

*Id.* at 674 (footnotes omitted).

Here, the ALJ was not persuaded that the reason for Livingood's termination related to his disabling injury. We cannot say that the evidence compels a contrary finding in that regard. Nevertheless, the circumstances in the present case are very different from those in *Chrysalis House*

and lead us to reconsider our construction of KRS 342.730(1)(c)2.

 KRS 446.080(1) mandates that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...." "The mandate of KRS 446.080 is particularly applicable to the Workers' Compensation Act which is often cited as an act to be liberally construed to effect its remedial purpose. All presumptions will be indulged in favor of those for whose protection the enactment was made." *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 732 (Ky.1983).

In construing statutes, our goal, of course, is to give effect to the intent of the General Assembly. We derive that intent, if at all possible, from the language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration. We presume that the General Assembly intended for the statute to be construed as a whole, for all of its parts to have meaning, and for it to harmonize with related statutes.

*Shawnee Telecom Res., Inc. v. Brown*, 354 S.W.3d 542, 551 (Ky.2011) (citation omitted).

 "It has long been established that the purpose of awarding income benefits to injured workers is to provide an ongoing stream of income to enable them to meet their essential needs and those of

their dependents." *Ball v. Big Elk Creek Coal Co.*, 25 S.W.3d 115, 117 (Ky.2000).

KRS 342.730(1) provides income benefits to replace some of the wages that workers lose due to the occupational effects of work-related injuries.

Consistent with the purpose of the benefit and with KRS 342.710(1)'s goal of encouraging a return to work, KRS 342.730(1)(c)2 focuses on post-injury wages . . .

The purpose of KRS 342.730(1)(c) 2 is to keep partially disabled workers in the habit of working and earning as much as they are able. It creates an incentive for them to return to work at which they will earn the same or a greater average weekly wage by permitting them to receive a basic benefit in addition to their wage but assuring them of a double benefit if the attempt proves to be unsuccessful.

*Toy v. Coca Cola Enterprises*, 274 S.W.3d 433, 434–35 (Ky.2008). The statute also "discourages an employer from continuing to employ an injured worker at the same or a greater wage for the sole purpose of securing a finding of partial rather than total disability or a finding under KRS 342.730(1)(c)2 rather than [a triple benefit under] KRS 342.730(1)(c) 1." *Chrysalis House* at 675.

In *Kentucky Mountain Coal Co. v. Witt*, 358 S.W.2d 517 (Ky.1962), the Court construed the former KRS 342.120(5)[2], which provided for awards to be paid from the Subsequent Claim Fund ("SCF") where a claimant was employed by the same em-

---

**2.** The statute provided:

'[A] claimant who has been awarded compensation under ... this chapter [who] becomes re-employed by the employer against whom the award was made, or continues in his employment in which he was injured, any part of the award not paid at the time the claimant becomes re-employed shall be paid out of the Subsequent Claim Fund; or, if the claimant has continued in his employment then the whole award shall be paid from the Subsequent Claim Fund.... The employment or re-employment contemplated herein shall be at wages equal to or greater than the employee was receiving before the traumatic injury by accident.'

ployer after an injury at the same or greater wage. At issue was whether the SCF remained liable for payment of the award after the claimant's employment was terminated. There, the award commenced on September 12, 1960. The claimant was reemployed at wages equal to or exceeding his former wages. The SCF proceeded to pay the award until June 1961, when it discovered that the reemployment had ended on March 2, 1961. The then Board relieved the SCF from payment and imposed liability upon the employer for future payments during such time as the claimant was not employed at the same or greater wage. The employer appealed. The Court affirmed.

The obvious purpose of the statute is to encourage reemployment of injured workmen at adequate wages by relieving the employer of the requirement of paying disability compensation in addition to full wages ... But the inducement or encouragement the legislature has extended is clearly for *continued* reemployment. It is not conceivable that the legislature intended to relieve an employer completely of liability for compensation payments if he should reemploy the workman for only one day.

In construing a statute the courts will consider the purpose which the statute is intended to accomplish.

*Id.* at 518.

We conclude that the construction of KRS 342.730(1)(c)2 in. *Chrysalis House* does not effectuate the legislative intent. Requiring that the cessation of employment at the same or greater wage must relate to the disabling injury does not promote the statute's obvious purpose of encouraging continued employment. Instead, it limits the statute's application. Moreover, such a construction does little to discourage employers from taking workers

back after an injury just long enough to avoid liability for a greater award.

■ Re-examining the statute in context reinforces our conclusion. The preceding subsection, KRS 342.730(1)(c) 1 governs application of the three multiplier and provides: "If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three...." By contrast, KRS 342.730(1)(c)2, governing application of the two multiplier, does not include the language, "if due to an injury." "[W]here the legislation includes particular language in one section of a statute, but omits it in another section of the same Act, it is generally presumed that the legislature acted intentionally and purposefully in the disparate inclusion or exclusion." *Turner v. Nelson*, 342 S.W.3d 866, 873 (Ky. 2011) (*citing Palmer v. Commonwealth*, 3 S.W.3d 763 (Ky.App.1999)).

■ Given our analysis, we conclude that *Chrysalis House* was incorrect in holding that the reason for cessation of work at the same or greater wage under KRS 342.730(1)(c)2 must relate to the disabling injury. To that extent, *Chrysalis House* is overruled. Nevertheless, a literal construction of KRS 342.730(1)(c)2 would lead to an unreasonable result if an employee like the one in *Chrysalis House* is allowed to benefit from his own wrongdoing.

"General principles of statutory construction hold that a court must not be guided by a single sentence of a statute but must look to the provisions of the whole statute and its object and policy." *County of Harlan v. Appalachian Reg'l Healthcare, Inc.*, Ky., 85 S.W.3d 607, 611 (2002) ... In addition, "[w]e have a duty to accord to words of a statute their literal meaning unless to do so would

lead to an absurd or wholly unreasonable conclusion." *Bailey v. Reeves*, Ky., 662 S.W.2d 832, 834 (1984) ... The legislature's intention "shall be effectuated, even at the expense of the letter of the law." *Commonwealth v. Rosenfield Bros. & Co.*, 118 Ky. 374, 80 S.W. 1178, 1180 (1904).

We must further acknowledge that the General Assembly "intends an Act to be effective as an entirety. No rule of statutory construction has been more definitely stated or more often repeated than the cardinal rule that significance and effect shall, if possible, be accorded to every part of the Act." *George v. Scent*, Ky., 346 S.W.2d 784, 789 (1961).

*Cosby v. Com.*, 147 S.W.3d 56, 58–59 (Ky. 2004)

KRS Chapter 342 evinces a legislative intent that an employee should not benefit from his own wrongdoing. KRS 342.165(2) [3] bars compensation where an employee knowingly and willfully makes a false representation regarding his or her physical condition or medical history in writing at the time of entering employment. KRS 342.610(3) provides that "[l]iability for compensation shall not apply where injury, occupational disease, or death to the employee was proximately caused primarily by voluntary intoxication as defined in KRS 501.010, or by his or her willful intention to injure or kill himself,

herself, or another." In *Advance Aluminum Co. v. Leslie*, 869 S.W.2d 39, 40 (Ky. 1994), the Court explained that "KRS 342.610(3) encompasses situations including horseplay, intoxication, or other employee conduct shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another." [4]

An employee's conduct after an injury may also result in the termination or reduction of income benefits. KRS 342.035(3) provides that "[n]o compensation shall be payable for the ... disability of an employee ... if and insofar as his disability is aggravated, caused, or continued, by an unreasonable failure to submit to or follow any competent surgical treatment or medical aid or advice." Where an employee refuses to submit to or obstructs an independent medical exam, KRS 342.205(3) provides that "his or her right to take or prosecute any proceedings under this chapter shall be suspended until the refusal or obstruction ceases. No compensation shall be payable for the period during which the refusal or obstruction continues." KRS 342.710(5) provides that "[r]efusal to accept [vocational] rehabilitation pursuant to an order of an administrative law judge shall result in a fifty percent (50%) loss of compensation for each week of the period of refusal."

---

3. The statute provides:

No compensation shall be payable for work-related injuries if the employee at the time of entering the employment of the employer by whom compensation would otherwise be payable falsely represents, in writing, his or her physical condition or medical history, if all of the following factors are present:
(a) The employee has knowingly and willfully made a false representation as to his or her physical condition or medical history;

(b) The employer has relied upon the false representation, and this reliance was a substantial factor in the hiring; and
(c) There is a causal connection between the false representation and the injury for which compensation has been claimed.

4. The version of KRS 342.610(3) in effect at that time provided that "liability for compensation shall not apply where the injury, occupational disease, or death to the employee was proximately caused primarily by his intoxication or by his willful intention to injure or kill himself or another."

Consistent with the foregoing, we conclude that the legislature did not intend to reward an employee's wrongdoing with a double benefit. We hold that KRS 342.730(1)(c)2 permits a double income benefit during any period that employment at the same or a greater wage ceases "for any reason, with or without cause," except where the reason is the employee's conduct shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another. In the instant case, the substantial evidence of record does not establish that Livingood's conduct was of that nature. Rather, the ALJ concluded that "but for the prior transgressions the pole bumping incident would not have resulted in [Livingood's] termination."

As noted by the Board, the ALJ and the parties appeared to assume that Livingood had returned to work at the same or greater wage; however, the ALJ did not determine Livingood's post-injury AWW. KRS 342.730(1)(c)2 requires a comparison of the pre-injury and post-injury AWW calculated in accordance with KRS 342.140. *Ball v. Big Elk Creek Coal*, at 118. The Opinion of the Court of Appeals is hereby affirmed in part and reversed in part and this claim is remanded for a determination of Livingood's post-injury AWW; if it is the "same or greater," the ALJ is instructed to apply the two multiplier pursuant to KRS 342.730(1)(c)2.

All sitting. All concur.