# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MARCH 14, 2019
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

FINAL

2018-SC-000385-WC

DATE 4/4/19 Kim Redmon, DC

COMMONWEALTH OF KENTUCKY,                                    APPELLANT
DEPARTMENT OF PARKS


ON REVIEW FROM COURT OF APPEALS
V.                  CASE NO. 2017-CA-001232-WC
WORKERS' COMPENSATION BOARD NO. WC-13-61953


SHANNON RUCKER; HONORABLE                                    APPELLEES
TANYA PULLIN, ADMINISTRATIVE LAW
JUDGE AND WORKERS' COMPENSATION
BOARD


## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

The issue before the Court is whether the two-multiplier under KRS[1] 342.730(1)(c)2 is available to a claimant who is found to retain the physical capacity to return to her pre-injury job/job duties, returns to her pre-injury work at the same or greater wage, but then voluntarily ceases employment. We hold that in such circumstances the two-multiplier is available and affirm the Court of Appeals.

---

[1] Kentucky Revised Statutes.

## I.    Factual and Procedural Background.

On October 19, 2013, while employed at the Department of Parks, Shannon Rucker sustained a back injury during her shift in the kitchen of the Two Rivers Restaurant at General Butler State Park. She received medical treatment and returned to work at the same wage but was placed on light duty due to lifting restrictions. Over the course of the next year, Rucker participated in occupational therapy, physical therapy, and received treatment from two physicians. In March 2014, Rucker voluntarily terminated her employment with the Department of Parks; she testified at the hearing before the Administrative Law Judge ("ALJ") that she quit because she did not like the job and had some personal issues with her children.

After leaving the Department of Parks, Rucker worked briefly as a waitress and cook, but she left due to low pay. She also worked as a manager at the Red Pepper Deli, making slightly more than what she was earning at the Department of Parks. She experienced back pain from heavy lifting while working at the Red Pepper Deli and voluntarily terminated employment in March 2016 for a "combination" of reasons. Rucker was not working at the time of the hearing before the ALJ but testified that she planned to continue working in the future.

The ALJ determined that Rucker suffered a work-related back injury, and applying the formula set forth in KRS 342.730(1)(b), awarded her a weekly permanent partial disability ("PPD") benefit of $27.80. The ALJ found that Rucker was not entitled to the three-multiplier under KRS 342.730(1)(c)1

2

because she retained the physical capacity to return to the type of work performed at the time of her injury. The ALJ concluded that "should there be a cessation of employment, if that cessation is not due to the 'employee's conduct shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another' then the two times multiplier contained in KRS 342.730(1)(c)2 would be applied." (quoting *Livingood v. Transfreight, LLC*, 467 S.W.3d 249, 259 (Ky. 2015)).

The Department of Parks petitioned the ALJ for reconsideration of its conclusion that Rucker's benefits could be enhanced by the two-multiplier, arguing that the two-multiplier did not apply as a matter of law since the ALJ found that Rucker was physically capable of returning to the type of work she performed pre-injury. The ALJ denied the Department of Parks' petition. On appeal, the Workers' Compensation Board ("Board") affirmed the ALJ, and the Court of Appeals affirmed the Board. This matter is now before us for review.

## II. Standard of Review.

The well-established standard for reviewing a workers' compensation decision is to "correct the Board only where the Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *W. Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992). Review by this Court "is to address new or novel questions of statutory construction, or to reconsider precedent when such appears necessary, or to review a question of constitutional magnitude." *Id.* at 688.

3

We review statutory interpretation de novo. *Cumberland Valley Contractors, Inc. v. Bell Cty. Coal Corp.*, 238 S.W.3d 644, 647 (Ky. 2007). KRS 446.080(1) directs that "[a]ll statutes of this state shall be liberally construed with a view to promote their objects and carry out the intent of the legislature...." This Court's goal, in construing statutes, "is to give effect to the intent of the [legislature]. We derive that intent . . . from the language the [legislature] chose, either as defined by the [legislature] or as generally understood in the context of the matter under consideration." *Livingood*, 467 S.W.3d at 256 (internal quotations and citations omitted). In construing provisions to match objectives of whole statutes, "[w]e have a duty to accord to words of a statute their literal meaning unless to do so would lead to an absurd or wholly unreasonable conclusion." *Id.* at 257–58 (internal citations and quotations omitted). Moreover, "'it is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there.'" *Wilson v. SKW Alloys, Inc.*, 893 S.W.2d 800, 802 (Ky. App. 1995) (quoting *Gateway Constr. Co. v. Wallbaum*, 356 S.W.2d 247, 248–49 (Ky. 1962)).

### III. Analysis.

KRS 342.730 provides, in pertinent part:

(1) . . . [I]ncome benefits for disability shall be paid to the employee as follows:

(c)1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise

4

determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. *During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection.* This provision shall not be construed so as to extend the duration of payments.

(emphasis added).

The plain language of KRS 342.730(1)(c)2 undoubtedly supports Rucker's position: "During *any period of cessation of . . . employment, temporary or permanent, for any reason, with or without cause,*" a claimant shall be awarded permanent partial disability benefits as modified by the two-multiplier. (emphasis added). In *Livingood*, this Court held that "KRS 342.730(1)(c)2 permits a double income benefit during any period that employment at the same or a greater wage ceases 'for any reason, with or without cause,' except where the reason is the employee's conduct shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another." 467 S.W.3d at 259 (quoting KRS 342.730(1)(c)2).

The Department of Parks suggests an interpretation of KRS 342.730 whereby the ALJ's finding of Rucker's physical capability to return to the type of work she performed before her injury precludes her eligibility for the two-multiplier and mandates that her PPD benefits be calculated solely under KRS

5

343.730(1)(b). However, nowhere in the statute does it state or imply that a claimant's physical capability to return to the type of work performed pre-injury bars application of the two-multiplier KRS 342.730(1)(c)2; if anything, a claimant's ability to return to work and actual return to work is a prerequisite for application of (c)2. Indeed, case law is clear that KRS 342.730(1)(c)2 "creates an incentive for [partially disabled workers] to return to work at which they will earn the same or a greater average weekly wage by permitting them to receive a basic benefit in addition to their wage but assuring them of a double benefit if the attempt proves to be unsuccessful." *Toy v. Coca Cola Enters.*, 274 S.W.3d 433, 435 (Ky. 2008); *see also AK Steel Corp. v. Childers*, 167 S.W.3d 672, 676 (Ky. App. 2005) ("[a]n injured employee who is physically able but fails to return to work is limited to the unenhanced benefit under KRS 342.730(1)(b)"). For the injured employee who is capable of returning to the same type of work at the same or greater wage, and does so, "[s]uch an employee is assured a double benefit during any period that he is not employed for whatever reason, and thus, he is compensated at an enhanced rate for having attempted to perform his previous work even if the attempt later proved to be unsuccessful." *AK Steel*, 167 S.W.3d at 676.[2]

Contrary to the Department of Parks' assertion, only the three-multiplier requires a finding by the ALJ that the employee "does not retain the physical

___

[2] This Court recently clarified that a claimant's "voluntary retirement and removal from the workforce for reasons not solely related to the workplace injury qualifies as a 'cessation of . . . employment . . . for any reason' and affords the application of the two-multiplier to benefits received[.]" *Active Care Chiropractic, Inc. v. Rudd*, 556 S.W.3d 561, 564 (Ky. 2018) (quoting KRS 342.730(1)(c)2).

capacity to return to the type of work that the employee performed at the time of the injury[.]" KRS 342.730(1)(c)1. A plain reading of the statute establishes that KRS 342.730 paragraphs (c)1 and (c)2 are not meant to be read in tandem, though there may be some situations in which both sections apply. *See Fawbush v. Gwinn*, 103 S.W.3d 5, 12 (Ky. 2003) ("[a]lthough the employer maintains that paragraph (c)2 modifies the application of paragraph (c)1 and, therefore, takes precedence, we note that the legislature did not preface paragraph (c)2 with the word "however" or otherwise indicate that one provision takes precedence over the other[]"). Indeed, KRS 342.730 paragraph (c)1 and (c)2 are separated by the word "or," evincing a legislative intent for each paragraph to be applicable separately. Prerogative lies with the ALJ "to determine which provision is more appropriate on the facts." *Id.*

Here, the ALJ determined, based on undisputed evidence, that Rucker retained the physical capacity to return to the type of work she performed at the time of injury, albeit with lifting restrictions, at the same or greater wage. This evidence supports application of the two-multiplier under KRS 342.730(1)(c)2, and the ALJ correctly concluded that Rucker would be entitled to receive the two-multiplier during any period of cessation of that employment, temporary or permanent, unless of course the reduction in income is shown to be due to her "intentional, deliberate action with a reckless disregard of the consequences either to herself or to another" as described in *Livingood*. 467 S.W.3d at 259.

7

## IV.    Conclusion.

For the reasons set forth above, we affirm the decision of the Court of Appeals.

Minton, C.J.; Hughes, Keller, Lambert, VanMeter and Wright, JJ., sitting.

Hughes, Keller, Lambert, VanMeter and Wright, JJ., concur.  Minton, C.J., dissents.

Chief Justice Minton dissents for the reasons set out in his dissent in *Active Care Chiropractic, Inc. v. Rudd*, 556 S.W.3d 561, 565-68 (Ky. 2018), as he believes the General Assembly did not intend to apply the two-multiplier to workers' compensation benefits received by individuals who voluntarily cease employment for reasons other than due to the work-related injury.

COUNSEL FOR APPELLANT:

Lori Vanhoose Daniel
FERRERI PARTNERS, PLLC


COUNSEL FOR APPELLEE,
SHANNON RUCKER:

Melissa Anderson
COTTON WOLFINBARGER & ASSOCIATES, PLLC

COUNSEL FOR APPELLEE,
TANYA GAYE PULLIN:

Tanya Gaye Pullin
ADMINISTRATIVE LAW JUDGE
DEPARTMENT OF WORKERS' CLAIMS


COUNSEL FOR APPELLEE, WORKERS' COMPENSATION
BOARD:

Dwight Taylor Lovan
EXECUTIVE DIRECTOR
OFFICE OF WORKERS' CLAIMS