RENDERED:  JUNE 25, 2021; 10:00 A.M.
TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0296-WC

TRACTOR SUPPLY COMPANY                                  APPELLANT

PETITION FOR REVIEW OF A DECISION
v.          OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-19-88426

PATRICIA WELLS; HONORABLE STEPHANIE
L. KINNEY, ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION BOARD            APPELLEES

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

THOMPSON, L., JUDGE:  Tractor Supply Company (Tractor Supply) appeals

from an opinion of the Workers' Compensation Board which affirmed an award

and order of the administrative law judge (ALJ) granting Patricia Wells, among

other things, permanent partial disability benefits.  Tractor Supply argues that

Wells was not entitled to a three-multiplier found in Kentucky Revised Statutes (KRS) 342.730(1)(c)1. We find no error and affirm.

## FACTS AND PROCEDURAL HISTORY

Wells began working for Tractor Supply on October 25, 2017, where she worked in the receiving and sorting department. Her job duties required her to lift up to 75 to 100 pounds in order to unload trucks and sort pallets of merchandise. On August 16, 2018, Wells injured her right arm, right shoulder, and neck while unloading boxes from a truck at Tractor Supply. She reported her injury the following day and sought treatment. Wells began light-duty work and received the same hourly rate in pay, but received less total earnings because she was unable to work overtime while on light duty.[1] Wells continued working in a light-duty capacity until January 28, 2019, when she was fired for allegedly giving false information during a company investigation.[2]

Wells saw multiple doctors as part of this workers' compensation claim. All of the doctors gave Wells work restrictions. They advised that she not do any overhead lifting and refrain from lifting items over 10 pounds.[3] The ALJ in this case found that Wells sustained a work-related right shoulder and cervical

_____

[1] The ALJ in this case found that Wells did not earn the same or greater wage when she began her light-duty work. That finding was not appealed to this Court.

[2] The investigation was unrelated to Wells' current injury and workers' compensation claim.

[3] One doctor believed she could lift items of at least 20 pounds, but only occasionally.

injury. This finding has not been appealed by Tractor Supply. As part of the ALJ's award, the ALJ believed Wells could not return to the same type of work she performed before her injury due to the lifting restrictions. The ALJ then multiplied her award by three pursuant to KRS 342.730(1)(c)1., which states in pertinent part:

> If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection[.]

Tractor Supply then filed a petition for reconsideration. It alleged that the three-multiplier was unavailable because of the holding in *Livingood v. Transfreight, LLC*, 467 S.W.3d 249 (Ky. 2015). The ALJ denied the petition and held that *Livingood* did not apply. Tractor Supply then appealed to the Board, but the Board affirmed the ALJ's award and also held that *Livingood* did not apply. This appeal followed.

## ANALYSIS

The only issues on appeal are whether Wells was properly awarded the three-multiplier and if *Livingood* applies to this case. "The function of further review of the [Board] in the Court of Appeals is to correct the Board only where [the] Court perceives the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as

-3-

to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

> KRS 342.285 designates the ALJ as the finder of fact. *Paramount Foods, Inc. v. Burkhardt,* 695 S.W.2d 418 (Ky. 1985), explains that the fact-finder has the sole authority to judge the weight, credibility, substance, and inferences to be drawn from the evidence. *Special Fund v. Francis,* 708 S.W.2d 641, 643 (Ky. 1986), explains that a finding that favors the party with the burden of proof may not be disturbed if it is supported by substantial evidence and, therefore, is reasonable.

*AK Steel Corp. v. Adkins*, 253 S.W.3d 59, 64 (Ky. 2008).

In addition, statutory interpretation is a legal issue which is reviewed *de novo*. *Commonwealth v. Long*, 118 S.W.3d 178, 181 (Ky. App. 2003). When engaging in statutory interpretation,

> our main goal is "to give effect to the intent of the General Assembly." The clearest indicator of that intent is the "language the General Assembly chose, either as defined by the General Assembly or as generally understood in the context of the matter under consideration." And "[w]here the words used in a statute are clear and unambiguous and express the legislative intent, there is no room for construction and the statute must be accepted as written."

*Bell v. Bell*, 423 S.W.3d 219, 223 (Ky. 2014) (footnotes and citations omitted).

In the case at hand, we must interpret KRS 342.730(1)(c)1 and how it relates to *Livingood*. In *Livingood*, Alton Livingood injured his left shoulder while working for Transfreight, LLC. Livingood underwent two surgeries and returned

to work on light duty after about six months. Livingood's salary did not change while he was on light duty. After a third surgery and two more months off from work, Livingood returned to work without restrictions. During his first shift after returning to work without restrictions, Livingood accidentally bumped a pole while operating a forklift. There was no damage. Ten days later, Livingood's employment was terminated.

During the workers' compensation case, a human resources officer from Transfreight testified that Transfreight had a progressive discipline policy where each infraction moved an employee up to a new level of discipline. At the time of the forklift accident, Livingood had already had two other infractions and was on a "full and final warning" status. The forklift accident was deemed to have been preventable and that is why he was terminated.

Livingood was awarded permanent partial disability benefits by the ALJ, but the ALJ did not award any multipliers. Livingood petitioned for reconsideration and argued that he was entitled to the two-multiplier described in KRS 342.730(1)(c)2. KRS 342.730(1)(c)2. states:

> If an employee returns to work at a weekly wage equal to
> or greater than the average weekly wage at the time of
> injury, the weekly benefit for permanent partial disability
> shall be determined under paragraph (b) of this
> subsection for each week during which that employment
> is sustained. During any period of cessation of that
> employment, temporary or permanent, for any reason,
> with or without cause, payment of weekly benefits for

> permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

Livingood argued he was entitled to the two-multiplier because he was no longer working for Transfreight. The ALJ denied the petition for reconsideration.

Livingood then appealed to the Board. The Board held that because Livingood's termination was not due to his injury, then the ALJ was correct in not awarding him the two-multiplier. Livingood then appealed to this Court, which affirmed. Livingood then appealed to the Kentucky Supreme Court.

The Kentucky Supreme Court held that the cessation of employment did not have to be due to injury for the two-multiplier to apply. The Court also held as follows:

> KRS 342.730(1)(c)2 permits a double income benefit during any period that employment at the same or a greater wage ceases "for any reason, with or without cause," except where the reason is the employee's conduct shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another.

*Livingood*, 467 S.W.3d at 259. The Court believed it would be unreasonable for an employee who was fired for intentional misconduct to be allowed to receive the two-multiplier because KRS Chapter 342 "evinces a legislative intent that an employee should not benefit from his own wrongdoing." *Id.* at 258. The Court

held that Livingood's termination was not due to a reckless disregard of the consequences, but because of the progressive discipline policy. The human resources officer testified that had Livingood not already had prior infractions, the accident with the forklift would not have resulted in his termination. The Court held that Livingood would be entitled to the two-multiplier if his return to employment was at the same or greater wage. The Court ultimately remanded the case because the ALJ did not make a specific finding as to whether Livingood returned to work at the same or greater wage.

As to the case at hand, Tractor Supply claims that Wells was terminated for misconduct and that the holding of *Livingood* regarding "an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another" should also apply to KRS 342.730(1)(c)1. We disagree with Tractor Supply's argument.

KRS 342.730(1)(c)1. and KRS 342.730(1)(c)2. are concerned with different issues.

> Consistent with the purpose of the benefit and with KRS 342.710(1)'s goal of encouraging a return to work, KRS 342.730(1)(c)2 focuses on post-injury wages. Although KRS 342.710(1) expresses a preference for a return to the same employment, KRS 342.730(1)(c)2 requires only that the injured worker "returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury." Thus, it applies without regard to whether the worker returns to the employment in which the injury occurred or to other employment.

Workers who retain the physical capacity to return to the type of work performed at the time of injury receive a basic income benefit under KRS 342.730(1)(b), regardless of their post-injury earnings. The purpose of KRS 342.730(1)(c) 2 is to keep partially disabled workers in the habit of working and earning as much as they are able. It creates an incentive for them to return to work at which they will earn the same or a greater average weekly wage by permitting them to receive a basic benefit in addition to their wage but assuring them of a double benefit if the attempt proves to be unsuccessful. Although the statute also creates an incentive for employers to continue to employ injured workers in order to avoid paying double benefits, its focus is on encouraging a return to work at the same or a greater wage rather than to a particular employment.

*Toy v. Coca Cola Enterprises*, 274 S.W.3d 433, 435 (Ky. 2008) (footnote and citation omitted). In essence, the two-multiplier is concerned with an employee leaving his or her employment after an unsuccessful attempt at returning.

KRS 342.730(1)(c)1., on the other hand, concerns whether or not an employee has the physical capacity to perform the type of work performed pre-injury. In other words, this statute is more concerned with physical ability. When examining the two statutes together, KRS 342.730(1)(c)1. is focused on an employee's physical abilities in determining whether a multiplier is appropriate and KRS 342.730(1)(c)2. is concerned with whether an employee leaves his employment.

As KRS 342.730(1)(c)2. is related to leaving employment, it is entirely reasonable for the Kentucky Supreme Court to determine that when an

-8-

employee loses his job due to reckless misconduct, awarding him or her a double benefit would be unreasonable and against public policy. We decline to extend the *Livingood* reasoning to KRS 342.730(1)(c)1. Whether Wells continued in her employment with Tractor Supply is irrelevant when it comes to the three-multiplier because the increase in benefits is not tied to continued employment. Due to Wells' injury and work restrictions, she was unable to return to the type of work she performed pre-injury. "To determine if an injured employee is capable of returning to the type of work performed at the time of injury, an ALJ must consider whether the employee is capable of performing 'the actual jobs that the individual performed.'" *Trane Commercial Systems v. Tipton*, 481 S.W.3d 800, 804 (Ky. 2016) (citing *Ford Motor Co. v. Forman,* 142 S.W.3d 141, 145 (Ky. 2004)). Once Wells was injured and her doctors put her on work restrictions, she was unable to perform the job she had pre-injury, namely unloading trucks and lifting heavy boxes. At this point she was entitled to the three-multiplier. Her later termination is irrelevant.

## CONCLUSION

Based on the foregoing, we affirm Wells' workers' compensation award. We decline to extend the holding of *Livingood* for the purposes of examining the three-multiplier found in KRS 342.730(1)(c)1.

ALL CONCUR.

-9-

BRIEF FOR APPELLANT:

Walter E. Harding
Louisville, Kentucky

BRIEF FOR APPELLEE PATRICIA
WELLS:

Michael D. Lindsey
Bowling Green, Kentucky