RENDERED: JUNE 16, 2022
TO BE PUBLISHED

# Supreme Court of Kentucky

2021-SC-0286-WC

TRACTOR SUPPLY                                                      APPELLANT

ON APPEAL FROM COURT OF APPEALS
No. 2021-CA-0296
WORKERS' COMPENSATION BOARD
No. 2019-WC-88426

V.

PATRICIA WELLS;                                                     APPELLEES
HONORABLE STEPHANIE L. KINNEY,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

This case is before the Court on appeal as a matter of right[1] by Tractor

Supply, the Appellant, from the Court of Appeals' ruling declining to extend the

holding in *Livingood v. Transfreight, LLC*, 467 S.W.3d 249 (Ky. 2015) to KRS

342.730(1)(c)1, colloquially known as the three-multiplier. The only issue

presented is whether this Court should now decide, as a matter of public

policy, whether our holding "that the legislature did not intend to reward an

employee's wrongdoing with a double benefit[,]" *Livingood,* 467 S.W.3d at 259,

should now be extended to preclude application of the three-multiplier when a

---

[1] Ky. Const. § 115.

claimant has been terminated for misconduct. Having reviewed the statute, the decision of the Court of Appeals, and the record, we decline to extend *Livingood* to the three-multiplier.

## I.      Facts and Procedural Posture

Because this appeal presents a narrow legal question, we omit the superfluous facts as to the injury of Patricia Wells, the Appellee. It suffices to note the ALJ did make a finding of fact that Wells sustained a right shoulder and cervical spine work injury on August 16, 2018, and that she retains a 15% permanent impairment. This was primarily based on the medical opinion of Dr. Ballard, who was the most recent doctor to evaluate Wells prior to the closing of evidence and who evaluated Wells on behalf of Tractor Supply. The ALJ cited Dr. Farrage's opinion in support as well. The ALJ made a finding of fact that Wells' pre- and post-injury average weekly wage was not the same or greater precluding application of the two-multiplier. Although the ALJ commented that Tractor Supply had failed to submit a full 52 weeks of wage records prior to Wells' injury, she calculated the pre- and post-injury wages according to the wage records that were submitted. Finally, the ALJ made a finding of fact that Wells did not have the physical capacity to perform her pre-injury work, based on Dr. Ballard's opinion, justifying application of the three-multiplier. Wells continued to work until January 24, 2019, when, according to Tractor Supply, she was fired for allegedly filing false information on a company report.

The ALJ rendered her decision, and Tractor Supply requested additional findings of fact from the ALJ considering the holding in *Livingood.* The ALJ

2

determined no additional findings were necessary because that case applies to the two-multiplier, KRS 342.730(1)(c)2. On appeal to the Workers' Compensation Board, the Board similarly determined *Livingood* did not apply to the three-multiplier. Tractor Supply appealed to the Court of Appeals.

The Court of Appeals affirmed, holding the two- and three-multipliers had distinct purposes—"When examining the two statutes together, KRS 342.730(1)(c)1. is focused on an employee's physical abilities in determining whether a multiplier is appropriate and KRS 342.730(1)(c)2. is concerned with whether an employee leaves his employment." Therefore, because

> KRS 342.730(1)(c)2. is related to leaving employment, it is entirely reasonable for the Kentucky Supreme Court to determine that when an employee loses his job due to reckless misconduct, awarding him or her a double benefit would be unreasonable and against public policy. We decline to extend the *Livingood* reasoning to KRS 342.730(1)(c)1. Whether Wells continued in her employment with Tractor Supply is irrelevant when it comes to the three-multiplier because the increase in benefits is not tied to continued employment. Due to Wells' injury and work restrictions, she was unable to return to the type of work she performed pre-injury. "To determine if an injured employee is capable of returning to the type of work performed at the time of injury, an ALJ must consider whether the employee is capable of performing 'the actual jobs that the individual performed.'" *Trane Commercial Systems v. Tipton*, 481 S.W.3d 800, 804 (Ky. 2016) (citing *Ford Motor Co. v. Forman,* 142 S.W.3d 141, 145 (Ky. 2004)). Once Wells was injured and her doctors put her on work restrictions, she was unable to perform the job she had pre-injury, namely unloading trucks and lifting heavy boxes. At this point she was entitled to the three-multiplier. Her later termination is irrelevant.

Tractor Supply now appeals to this Court.

3

## II.     Standard of Review

This appeal presents a question of law and there is no appeal of any factual findings by the ALJ, therefore our review is *de novo. Consol of Ky., Inc. v. Goodgame,* 479 S.W.3d 78, 81 (Ky. 2015). Appellant asserts that this Court should, as a matter of public policy, extend *Livingood* to the three-multiplier. But that argument fundamentally mistakes the nature of this Court's authority, and the basis upon which *Livingood* was decided. We have previously explained,

> The Commonwealth's power to legislate public policy in the area of employer/employee relations derives from its police power as well as the community interest in regulating the safety of the workplace and in requiring employers to provide for injured workers and their dependents so that they do not become a burden on the community.

*Johnson v. Gans Furniture Indus., Inc.,* 114 S.W.3d 850, 856 (Ky. 2003) (citing *Workmen's Compensation Board of Kentucky v. Abbott,* 278 S.W. 533 (1925)). This Court is imbued neither with policymaking nor police powers. Instead, our function is to interpret what a statute says and apply it to a particular set of facts.

When interpreting a statute, "[a] well-established rule of statutory construction is that the courts will consider the purpose which the statute is intended to accomplish—the reason and spirit of the statute—the mischief intended to be remedied." *City of Louisville v. Helman,* 253 S.W.2d 598, 600 (Ky. 1952) (citations omitted). On the other hand, "[i]t is neither the duty nor the prerogative of the judiciary to breathe into the statute that which the Legislature has not put there. The humane spirit of the statute does not

4

warrant its extension beyond its legitimate scope." *Faust v. Commonwealth,* 142 S.W.3d 89, 94-95 (Ky. 2004) (quoting *Gateway Constr. v. Wallbaum,* 356 S.W.2d 247, 248–49 (Ky. 1962)). As we recently stated, "Legislative intent is paramount when construing a statute." *Martin v. Warrior Coal, LLC*, 617 S.W.3d 391, 394 (Ky. 2021).

### III. Analysis

The pertinent statutory provisions of KRS 342.370(1) read

(c) 1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

In *Livingood,* we concluded

that the legislature did not intend to reward an employee's wrongdoing with a double benefit. We hold that KRS 342.730(1)(c)2 permits a double income benefit during any period that employment at the same or a greater wage ceases "for any reason, with or without cause," except where the reason is the employee's conduct [is] shown to have been an intentional, deliberate action with a reckless disregard of the consequences either to himself or to another.

5

467 S.W.3d at 259. This ruling was based not on any specific language in KRS 342.730(1)(c)2 but rather on the general thrust of the entire Workers' Compensation statute. "KRS Chapter 342 evinces a legislative intent that an employee should not benefit from his own wrongdoing." *Id.* at 258. We then cited several provisions[2] of KRS Chapter 342 to demonstrate this general intent. *Id.* Thus, our holding in *Livingood* was not a usurping act of policymaking by this Court but was grounded in the text of KRS Chapter 342.

It was necessary to declare this general rule since we determined we had erred in our prior interpretation of KRS 342.730(1)(c)2, in the now-overruled case of *Chrysalis House, Inc. v. Tackett*, 283 S.W.3d 671 (Ky. 2009), which held when applying the two-multiplier "the cessation of employment at the same or greater wage must relate to the disabling injury." *Livingood*, 467 S.W.3d at 257. *Livingood* recognized the plain language of KRS 342.730(1)(c)2 did not include any "due to an injury" language like that found in KRS 342.730(1)(c)1. Instead, KRS 342.730(1)(c)2 declares "During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause . . ." the two-multiplier shall be applied. In restoring the purpose of KRS

---

[2] Specifically, we cited to KRS 342.165(2) which "bars compensation where an employee knowingly and willfully makes a false representation regarding his or her physical condition or medical history in writing at the time of entering employment[,]" *Livingood*, 467 S.W.3d at 258; KRS 342.610(3) which bars compensation where the injury, occupational disease, or death was willfully intended by the claimant; KRS 342.035(3) which bars compensation when a claimant's injury is aggravated or continued by an unreasonable failure to follow surgical or medical advice; KRS 342.205(3) which bars recovery if a claimant refuses to submit to an independent medical exam; and KRS 342.710(5) which reduces compensation by 50% for each week a claimant refuses to attend vocational rehabilitation ordered by an ALJ.

342.730(1)(c)2, however, we also recognized "a literal construction of KRS 342.730(1)(c)2 would lead to an unreasonable result if an employee like the one in Chrysalis House is allowed to benefit from his own wrongdoing." *Livingood*, 467 S.W.3d at 257.

KRS 342.730(1)(c)1 does not provide for consideration of continuing employment, or the reasons underlying a termination, when determining whether the three-multiplier should be applied. It is concerned with compensating a claimant for the injury suffered that has reduced their ability to do the same type of work as they did pre-injury. In contrast, KRS 342.730(1)(c)2

> is to keep partially disabled workers in the habit of working and earning as much as they are able. It creates an incentive for them to return to work at which they will earn the same or a greater average weekly wage by permitting them to receive a basic benefit in addition to their wage but assuring them of a double benefit if the attempt proves to be unsuccessful.

*Toy v. Coca Cola Enters.*, 274 S.W.3d 433, 435 (Ky. 2008). Thus, the two-multiplier only applies when there is a cessation of employment; justifying *Livingood*'s holding that a claimant would profit by his or her misconduct if the two-multiplier were applied to a claimant whose employment was terminated as a result of misconduct.

Such an unjust profit cannot occur with regard to KRS 342.730(1)(c)1 because the three-multiplier only ever applies when "due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury[.]" There is not an incentive structure in the three-multiplier analogous to the two-multiplier; thus, the

Court of Appeals' reasoning is sound. The three-multiplier benefit is concerned with a finding of disability, and not tied to any condition of employment. Therefore, application of the general rule that no claimant should profit by his or her misconduct serves no substantive purpose regarding the three-multiplier. Wells was unable to return to her pre-injury work after August 16, 2018, and her firing, even if for misconduct, did not increase or prolong the income benefits she would otherwise receive. In fact, applying the *Livingood* rule to the three-multiplier would create a mischievous incentive for employers to concoct reasons to fire those employees who are receiving three-multiplier benefits to reduce their payments.

Finally, one could argue that an employee might intentionally and deliberately, with reckless disregard for himself or others, injure himself; and because so, a three-multiplier would be unjust if his injury would otherwise call for it. We agree, but only because the General Assembly has already provided for that exact scenario in KRS 342.610(3), stating, "Liability for compensation shall not apply to injury, occupational disease, or death to the employee if the employee willfully intended to injure or kill himself, herself, or another." Thus, we find no statutory basis to extend *Livingood* to application of the three-multiplier.

### IV.    Conclusion

Wells suffered a permanent injury in 2018 that physically prevented her from performing the same work she performed prior to the injury. She was later terminated in 2019 due to an unrelated incident allegedly involving the

8

inclusion of false information on a work report. KRS 342.730(1)(c)1 does not provide for consideration of post-injury conduct at work when applying the three-multiplier. It calls only for a determination of whether the claimant could return to the type of work performed pre-injury. Since the treble increase in benefits is not tied to a claimant being employed, the statutory prohibition that a claimant should not profit by their misconduct is not applicable—the claimant has not gained anything as a proximate result of their misconduct that would trigger application of the rule. Thus, nothing in the statute or the facts below requires extension of *Livingood* to KRS 342.730(1)(c)1. The Court of Appeals is affirmed.

All sitting. All concur.


COUNSEL FOR APPELLANT:

Walter E. Harding
Boehl Stopher & Graves, LLP

COUNSEL FOR APPELLEE:

Michael D. Lindsey

ADMINISTRATIVE LAW JUDGE:

Stephanie L. Kinney

WORKERS' COMPENSATION BOARD:

Michael Wayne Alvey,
Chairman

9